**SIGNED THIS: June 16, 2006**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CHARLES W. LORTZ,** | ) | No. 05-87542 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

This matter is before the Court on the motion for relief from the stay filed by FORD MOTOR CREDIT COMPANY (FMCC) and the objection by RICHARD E. BARBER, the Chapter 7 Trustee (TRUSTEE). The issue is whether a creditor that mistakenly releases its lien on a certificate of title to a motor vehicle and returns the title to the owner causes its security interest to become unperfected so as to be avoidable by a trustee in bankruptcy. A hearing was held on January 26, 2006, at which time the parties agreed to submit the matter for decision on a stipulation of facts and written briefs.

The parties have stipulated to the facts as follows. On July 14, 2005, CHARLES W. LORTZ, the Debtor (DEBTOR), obtained financing from FMCC to purchase a 2005 Ford

Ranger. The amount financed of $16,657.89 was payable over five years with interest at 15.25% in equal installments of $400.90 per month. The first payment was due August 28, 2005. FMCC perfected its security interest in the vehicle by having its lien noted on the certificate of title.

Between August 25, 2005, and November 14, 2005, FMCC'S records show that it posted twelve payments on the loan sufficient to pay it off in full. Its records also show that each of the twelve payments was returned for insufficient funds within days of receipt. FMCC concedes that it mistakenly failed to reverse the credits on the account when the payments were returned. As a result of its error, FMCC'S records reflected that the account had been paid in full as of November 14, 2005, despite the fact that no collectible funds had ever been received. After posting the November 14 payment, FMCC automatically generated a paid in full letter, executed the lien release on the title and mailed the letter and the title to the DEBTOR. Apparently realizing its mistake soon thereafter, FMCC repossessed the vehicle on November 22, 2005.[1]

On December 2, 2005, the DEBTOR filed a Chapter 7 petition. In his Statement of Financial Affairs, the DEBTOR disclosed the repossession of the vehicle, noting that FMCC'S lien may have been released in error. The DEBTOR listed FMCC as an unsecured creditor holding a claim in an unknown amount. Based on the DEBTOR'S failure to make the required payments, FMCC filed a motion for relief from the automatic stay, alleging that the DEBTOR had neither reaffirmed the debt nor redeemed the vehicle. The TRUSTEE

---

[1] In its brief, FMCC states that when it realized that the title was released in error, it took action to secure the collateral. FMCC does not allege that it attempted to repossess or replevy the certificate of title.

filed a response, objecting on the ground that FMCC may have released its lien. Thereafter, the DEBTOR voluntarily gave the TRUSTEE the certificate of title to the Ford Ranger. At the hearing, the parties consented to the Court treating the matter as a proceeding to determine whether the lien is avoidable by the TRUSTEE, even though no adversary proceeding has been filed.

The TRUSTEE contends that FMCC'S lien is vulnerable to avoidance in the exercise of his strong arm powers under Section 544(a) of the Bankruptcy Code. FMCC contends that its lien, having been released by mistake, remains valid. Characterizing the lien release as a "clerical error," FMCC points to its prompt repossession of the vehicle, which occurred prior to the filing of the bankruptcy petition, as evidence of an intent not to release its security interest. Accordingly, the Court must determine whether, under Illinois law, the judicial lien granted to the TRUSTEE pursuant to Section 544(a)(1) has priority over the lien of FMCC, which was released on the certificate of title by mistake.

Section 544(a) of the Bankruptcy Code, known as the "strong arm" provision, confers upon the bankruptcy trustee the status of a hypothetical judicial lienholder allowing the trustee to take priority over liens and security interests against property of the debtor's bankruptcy estate which were not perfected or which were improperly perfected under state law. 11 U.S.C. § 544(a)(1); *Matter of Fullop*, 6 F.3d 422 (7th Cir. 1993). Though federal law invests the trustee with the status of a hypothetical lien creditor, applicable state law governs the issues of perfection and priority. *U.S. v. Rotherham,* 836 F.2d 359 (7th Cir. 1988); *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303 (7th Cir. 1983). The Illinois Vehicle

Code governs perfection of security interests in motor vehicles while the Uniform Commercial Code (UCC) governs the priority of those interests. *Rotherham,* 836 F.2d at 365 (citing *Finance American Commercial Corp. v. Econo Coach, Inc.,* 95 Ill.App.3d 185, 419 N.E.2d 935 (Ill.App. 2 Dist. 1981) and *Peterson v. Ziegler,* 39 Ill.App.3d 379, 350 N.E.2d 356 (Ill.App. 5 Dist. 1976)).

Under Illinois law, the interest of a judicial lien creditor takes priority over an unperfected security interest. *First Nat. Bank of Lacon v. Strong,* 278 Ill.App.3d 762, 663 N.E.2d 432 (Ill.App. 3 Dist. 1996); *Marquette Nat. Bank v. B.J. Dodge Fiat, Inc.,* 131 Ill.App.3d 356, 475 N.E.2d 1057 (Ill.App. 2 Dist. 1985); *In re Church,* 206 B.R. 180, 183 (Bankr.S.D.Ill. 1997). Accordingly, a bankruptcy trustee prevails over the holder of a security interest in a vehicle who fails to perfect its security interest in accordance with the statute. *Matter of Keidel,* 613 F.2d 172 (7th Cir. 1980).

Although the pledge of a vehicle to secure a debt is an Article 9 security interest, the Illinois Vehicle Code provides the exclusive means for perfecting and giving notice of security interests in motor vehicles. 625 ILCS 5/3-207; *Arena Auto Auction, Inc. v. Mecum's Countryside Motor Co., Inc.,* 251 Ill.App.3d 96, 621 N.E.2d 254 (Ill.App. 2 Dist. 1993). A security interest in a vehicle is perfected "by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee." 625 ILCS 5/3-202(b). It is then the responsibility of the Secretary of State's office to issue the certificate of title with the secured party's lien properly noted thereon. It is not disputed that FMCC had, for a time,

a perfected security interest in the DEBTOR'S 2005 Ford Ranger as a result of filing its application with the Secretary of State and the Secretary of State's issuance of a certificate of title showing FMCC as the lienholder. Rather, the issue is whether FMCC'S execution of the release on the certificate of title and return of the title to the DEBTOR rendered it unperfected as of the petition date when the TRUSTEE'S rights accrued.

Initially, it is worth emphasizing the distinction between a security interest and perfection of that interest. It is entirely possible for a creditor to hold a valid security interest that is not perfected. A signed security agreement stands by itself and governs the creditor's rights in collateral with respect to the debtor. A security agreement is enforceable against a debtor even if the security interest is not perfected. Perfection is only significant, indeed critical, with respect to the creditor's rights vis-a-vis third parties. On the other hand, perfection may not be achieved or maintained without a valid security interest granted by the debtor. If a security agreement is invalid or is terminated, a lien noted on a title is worthless.

With that background, the Court accepts FMCC'S argument that the mistaken release of lien did not discharge the DEBTOR'S liability for the unpaid loan balance or terminate FMCC'S security interest in the vehicle. The issue before the Court, however, turns on the question of perfection alone. Lack of perfection relates only to the issue of priority over other creditors' interests in the collateral and does not, by itself, terminate or impair the secured party's rights as against the debtor. *Matter of Yealick's Estate,* 69 Ill.App.3d 353, 387 N.E.2d 399 (Ill.App. 4 Dist. 1979); *Application of County Treasurer of DuPage County,* 16 Ill.App.3d 385, 306 N.E.2d 743, (Ill.App. 2 Dist. 1973).

5

The Illinois Vehicle Code addresses perfection and release but not in a comprehensive fashion. Perfection is defined as follows:

> A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. The security interest is perfected as of the time of its creation if the delivery to the Secretary of State is completed within 21 days after the creation of the security interest or receipt by the new lienholder of the existing certificate of title from a prior lienholder or licensed dealer, otherwise as of the time of the delivery.

625 ILCS 5/3-202(b). Notably, perfection is not defined as occurring when the secured party's lien is noted on the certificate of title. Instead, perfection occurs at that earlier point when the Secretary of State receives the necessary documents to enable it to identify and note the lienholder on the title. Thus, the possibility exists that a lien may be perfected even though it is not noted on the title where, for example, the Secretary of State's office, having received the application and title, hasn't gotten around to completing the notation yet or fails to do so in error.

The case at bar, however, involves not a lien that was never noted on the title but one that was properly noted and then subsequently released. The release was effected by an FMCC employee executing the portion of the certificate of title specifically designated for the purpose of a lienholder to release its lien by execution or signature.[2] The Vehicle Code authorizes the Secretary of State to prescribe a form of certificate of title that includes the naming of a lienholder and the assignment or release of the security interest of a lienholder. 625 ILCS 5/3-107(b). It further provides that a certificate of title issued by the

---

[2] There is no allegation that the release was obtained by fraud or that the employee that signed the release was acting outside of the authorized scope of employment.

6

Secretary of State is *prima facie* evidence of the facts appearing on it. 625 ILCS 5/3-107(c). The purpose of this provision is to provide the public with a readily available means of identifying the owners and lienholders of the vehicle and parties dealing with the vehicle are entitled to rely upon the information that appears on the face of the certificate of title. *Spaulding v. Peoples State Bank of Bloomington,* 25 Ill.App.3d 118, 120, 323 N.E.2d 143, 144-145 (Ill.App. 4 Dist. 1975); *In re German,* 285 F.2d 740, 742 (7th Cir. 1961) (provision of Illinois Motor Vehicle Act dealing with perfection of security interests, like other Illinois recording statutes, should be construed as primarily a constructive notice statute).

Although the Vehicle Code does not expressly define the effect of execution of the lien release portion on a certificate of title, it is not disputed that such execution is the accepted method by which liens are released and by which public notice is given of the release of motor vehicle liens. Section 3-205 describes the process by which a creditor releases a security interest as consisting of two steps:

(1) executing a release, and
(2) mailing or delivering the release and the certificate of title to the next lienholder or, if none, the owner.

625 ILCS 5/3-205.

Although Section 3-205 requires a creditor to release its security interest within 21 days after payment of the secured loan, it is clear that this section does not make full payment a prerequisite to a valid release. There is no question that a secured party has the power to release the security interest or only the lien before full payment of the secured debt.[3] By imposing a 21-day time limit for a secured party to execute a release and return

---

[3] For example, a security interest in collateral may be voluntarily terminated where it is deemed by the creditor to be worthless or where the debtor is substituting other collateral. A lien alone may be released, without termination of the security interest, pursuant to a subordination agreement. Section 3-205, not making that distinction, addresses

7

the certificate of title, and a monetary penalty for noncompliance, the section's purpose is to prevent a recalcitrant lender from holding the title indefinitely after the loan has been fully paid, thereby impeding the owner's ability to sell the vehicle or borrow new funds against it.  Section 3-205 was intended not to define the minimum conditions for when a lien could be released, with full payment as a prerequisite, but to delineate only *when* a secured creditor *must* release its lien.  Other than generally describing the steps by which a security interest is released, Section 3-205 has no impact on the issue before the Court.

Of greater significance is Section 3-207, which provides that the stated method for perfecting and "giving notice of security interests" in motor vehicles is exclusive of any recording or filing requirement.  625 ILCS 5/3-207.  The method referred to for giving notice of security interests is the notation of the lien on the original certificate of title.  The importance of the original title for the purpose of giving notice of liens is obvious when one considers that it is the title that is the necessary document both to transfer ownership of a motor vehicle and to perfect a security interest in a motor vehicle.  *See,* 625 ILCS 5/3-112, 3-202(b) and 3-203.  A lien that is noted on the title, by the very fact of its presence there, gives conclusive notice so that any subsequent transferee or lender necessarily acquires their interest subject to the lien.  Just as well, a lien that is released on the title is notice of its termination which may be relied upon by a transferee or lender so that they take free and clear of the released lien.  An unperfected security interest in a titled vehicle is not valid against subsequent transferees or lienholders.[4]  625 ILCS 5/3-202(a).  Using the

---

only the narrow issue of a creditor's duty to release its security interest upon receipt of full payment.

[4]The UCC commentary also indicates that a security interest, once perfected, that becomes unperfected before a judicial lien arises, is subordinate to the judicial lien.  UCC Comment, par. 4, to § 9-317 at 810 ILCS 5/9-317.

8

original certificate of title as the exclusive method of giving such notice allows transactions concerning motor vehicles to be conducted easily and with certainty. *See, Meeks v. Mercedes Benz Credit Corp.,* 257 F.3d 843, 845 (8th Cir. 2001) (policy behind certificate of title laws is that potential purchasers or creditors may rely upon certificate of title for notice of encumbrances).

The Court also accepts FMCC'S representation that it did not intend to release its security interest for anything less than full payment of the loan, which is simply another way of saying that the lien was released by mistake. As with all perfection laws, however, which focus on third party perceptions and clarity and certainty of notice, the intent of the secured party is not relevant to questions of perfection and errors can be fatal.[5]

It is also critical, here, that FMCC returned possession of the original certificate of title to the DEBTOR. Had FMCC executed the lien release but then caught the error before mailing the title to the DEBTOR, its perfected status may well have been preserved. By giving up possession of the title, however, FMCC in effect placed it back into the stream of commerce where it became open to reliance by third party purchasers and lien creditors with no notice that the lien had been released in error.

In *In re Office Machines Exchange, Inc.,* 47 B.R. 644 (Bankr.S.D.Ill. 1985), the court rejected a trustee's argument that he could avoid a bank's security interest in a vehicle where the bank, in anticipation of a payoff that never materialized, executed the release of lien on the title but retained possession of it. Reasoning that the Illinois statutory scheme

---

[5]The situation at bar is analogous to a mortgagee who mistakenly records a release of mortgage in the county recorder's office. When bankruptcy intervenes during such period of unperfection, the mistakenly released mortgage is avoidable by the trustee. *In re Johnson,* 2006 WL 1075417 (Bankr.N.D.Ill. 2006); *In re Anderson,* 324 B.R. 609 (Bankr.W.D.Ky. 2005); *In re Godwin,* 217 B.R. 540 (Bankr.S.D.Ohio 1997).

for the perfection and release of liens was intended to protect third party transferees and prospective lienholders, the court concluded as follows:

> If the Bank had relinquished possession of the certificate of title, thereby creating the possibility that third parties would take positions in reliance of the Bank's executed release form, the Bank would be estopped from claiming that it had a valid lien in the Corvette, even if its security interest was not satisfied. Under the facts of this case, however, the Bank has constantly maintained possession of the certificate of title, thereby effectively precluding any third party from obtaining knowledge of its erroneous release. The Trustee cannot assert his status as a hypothetical lien creditor because the Bank has a properly perfected security interest in the 1980 Chevrolet Corvette.

47 B.R. at 647.

FMCC'S reliance upon two previous bankruptcy court decisions out of this District, *In re Allen,* 1997 WL 33475068 (Bankr.C.D.Ill. 1997) and *In re Granger,* No. 95-80898 (Bankr.C.D.Ill. 1995), is unavailing. Those cases, both involving Chapter 13 proceedings, stand for the proposition that a Chapter 13 debtor cannot exercise a trustee's avoiding powers, so that an unperfected security interest cannot be avoided in a plan and the creditor must be treated as holding a secured claim. Likewise, *First Galesburg Nat. Bank & Trust Co. v. Martin,* 58 Ill.App.3d 113, 373 N.E.2d 1075 (Ill.App. 3 Dist. 1978), also relied upon by FMCC, deals only with the effect between the bank and the borrower of the bank's error in marking a note paid and returning it to the borrower.

FMCC also contends that even though its lien was released on the title, the records of the Secretary of State continued to reflect FMCC'S lien. Unlike the laws of other states, however, the Illinois Vehicle Code does not require the lienholder to submit the title to the Secretary of State in order for a release of lien to be effective.[6] While it may be viewed as

---

[6] *See, In re Marshall*, 266 B.R. 554 (Bankr.M.D.Ga. 2001)(Alabama statute requires, in addition to satisfaction of the lien, in order for a lien release to be effective, (1) execution of a release on the certificate; (2) delivery of the certificate to the next lienholder or owner; and (3) delivery of the certificate to the DOR by the next lienholder or owner).

unfair to deprive a secured creditor of its lien because of an honest mistake, Illinois law places a "strong emphasis" on the need to obtain and maintain perfection in accordance with the statutory method; the consequent gain in certainty and regularity outweighs any such perceived unfairness. *Keidel,* 613 F.2d at 175.

This Court concludes that the effect of a release of lien, as to third parties, is not dependent upon full payment or the intent of the secured party, questions of fact that are not reflected on the certificate of title and that are "outside the record" so to speak.[7] Because the certificate of title is the exclusive method of perfecting and giving notice of a lien, what appears on the face of the certificate of title must be determinative where third party interests are involved. The Court holds that by returning the original certificate of title, with its lien released, to the DEBTOR, FMCC became so far unperfected that a judicial lien creditor would gain a priority interest in the vehicle under Illinois law. Therefore, FMCC'S lien is avoidable by the TRUSTEE and its motion for relief from the automatic stay must be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

# # #

---

[7] These questions are relevant with regard to the effect of a release as between the debtor and the creditor.